**TESTIMONY OF**
**THE DEPARTMENT OF THE ATTORNEY GENERAL**
**KA ʻOIHANA O KA LOIO KUHINA**
**THIRTY-THIRD LEGISLATURE, 2026**

**ON THE FOLLOWING MEASURE:**
S.B. NO. 2471, S.D. 2, H.D. 1, RELATING TO THE POWERS OF ARTIFICIAL PERSONS.

**BEFORE THE:**
HOUSE COMMITTEE ON JUDICIARY & HAWAIIAN AFFAIRS

**DATE:** Wednesday, April 8, 2026 **TIME:** 2:00 p.m.

**LOCATION:** State Capitol, Room 325

**TESTIFIER(S):** Anne E. Lopez, Attorney General, or
Christopher T. Han or Christopher J.I. Leong, Deputy Attorneys General

---

Chair Tarnas and Members of the Committee:

The Department of the Attorney General (Department) strongly opposes this bill.

The purpose of this bill is to restrict the power of "artificial persons" created under state law by prohibiting corporations and other covered entities from spending money or contributing anything of value to influence elections or ballot measures. The bill effectuates this restriction by withdrawing certain state-conferred charter privileges, designating election activity and ballot-issue activity as *ultra vires* and void, and ordering the forfeiture of all charter privileges as the penalty for exercising prohibited political spending powers.

While the Department greatly sympathizes with the frustration with federal caselaw on this subject, this bill is likely impossible to defend without *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310 (2010), being overturned. While many Americans strongly disagree with the U.S. Supreme Court's holding in *Citizens United*, under our federal system of government, it is our duty to state that this opinion remains the law of the land, irrespective of its merits (or lack thereof).

In *Citizens United*, the U.S. Supreme Court "rejected the argument that political speech of corporations or other associations should be treated differently under the First Amendment simply because such associations are not 'natural persons'." *See id.* at 343. The underlying rationale for the Court's holding that corporations have the right to

**EXHIBIT A**

speech through political campaign donations is that they are "associations" of individuals. The Court further explained that, by banning corporate expenditures, "certain disfavored associations of citizens—those that have taken on the corporate form—are penalized for engaging in the same political speech." *Id*. at 356.

To apparently work around what is plain in the case, this bill relies on an untested legal theory using an unprecedentedly dangerous mechanism—the *full* revocation of all corporate powers in the state—in defense of a theory that collapses in upon itself upon further examination.

The operative theory behind this bill is that states have the ability to define corporate powers and can strip certain powers to speak based upon the content of that speech that are otherwise protected by the First Amendment and *Citizens United*. This approach alone will likely be subject to strict scrutiny as a form of content-based speech restriction under the First Amendment, as this bill removes only speech related to elections and ballot initiatives from a corporation's powers, while permitting a corporation to retain its ability to speak in other contexts. *See e.g., Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 8 (1986) ("The identity of the speaker is not decisive in determining whether speech is protected."); *First Nat. Bank of Bos. v. Bellotti*, 435 U.S. 765, 777 (1978) ("The inherent worth of the speech in terms of its capacity for informing the public does not depend upon the identity of its source, whether corporation, association, union, or individual.").

The bill purports to revoke all corporate powers granted by Hawaii law in their entirety and then regrant powers pursuant to the new law. This type of drastic legal maneuver alone may create significant unforeseeable impacts from actions regarding all Hawaii corporations at such scale. This bill then contradicts its own theory by saying that foreign corporations authorized to transact business in Hawaii, that are otherwise transacting business in Hawaii, or that own property in Hawaii, are also subject to the provisions of the bill. *See, e.g.*, page 11, lines 1-7, and page 19, lines 8-14. However, Hawaii has no ability to define the corporate powers of foreign corporations, which are governed by the state laws where they are incorporated. The theory simply does not

account for how Hawaii can regulate the speech of foreign corporations when it does not grant the powers of those corporations, and this is logically and legally fatal.[1]

This bill may also face an unconstitutional conditions challenge in effectively permitting a corporation to keep certain state-granted benefits only if it refrains from engaging in election activity or ballot-issue activity, activities that a normal corporation is otherwise entitled to engage in under U.S. Supreme Court case law.

Lastly, a legal challenge could result in substantial legal fees for the State's taxpayers, as courts have recognized a corporation's standing to assert constitutional violations under 42 U.S.C. section 1983. *See RK Ventures, Inc. v. City of Seattle*, 307 F.3d 1045, 1057 n.7 (9th Cir. 2002). Pursuant to 42 U.S.C. section 1988(b), "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs[.]"

We understand and appreciate the frustrations with the U.S. Supreme Court case law in this area. The solution, however, is not this bill, which if passed into law, would have the likely result of only further entrenching *Citizens United* into the law. We ask that this bill be held. Thank you for the opportunity to testify.

---

[1] Ironically, if this bill is passed into law, one possibility is that only *foreign* corporations could be in a position to engage in the activities addressed by this bill in Hawaii, while domestic corporations would be prohibited from doing so.